OPINION OF THE COURT
Joan A. Madden, J.
Petitioners Car Barn Flats Residents’ Association and Nancy Donovan-Plummer seek an order annulling, vacating and reversing the order and opinion denying the petition for administrative review (PAR) of the New York State Division of Housing and Community Renewal (DHCR), dated February 11, 1999, which affirmed the order by the District Rent Administrator dated February 24, 1998, permitting Manhattan East Realty L. L. C. (Landlord), the owner of the housing accommodations known as 205, 209, 213 and 215 East 66th Street, New York, New York (the premises), to cease providing electric service and convert to individual electric metering.
Petitioners do not object to the conversion to individual metering sought by the Landlord. Petitioners object to DHCR’s decision on the grounds that, inter alia, the change in the method of computing from a three-step process to a single-step fixed schedule for determining rent adjustments for buildings converting from master to individual metering permits a diminution of services without commensurate rent adjustments, and, that DHCR, in changing the method of computation, failed to adhere to the rule-making mandates of the State Administrative Procedure Act.[1] Respondents DHCR and Landlord oppose.
Background
The premises consist of four prewar buildings located at East 66th Street, New York, New York. Each building contains approximately 25 apartments. Prior to the implementation of the DHCR order under review, the building was an electrical inclusion building, i.e., the building owner supplied and paid for electricity at the premises. According to DHCR’s counsel, during the years 1974 through 1984, the New York City Rent Guidelines Board “promulgated a special guidelines rent *828 increase for electrical inclusion buildings [which] permitted increases ranging between [1]/2% and 4% for vacancy and renewal leases [for electrical inclusion adjustments in addition to other statutory increases]” (Marcia P. Hirsch, affirmation in opposition to petition, para 14, at 6). The rent for the apartments herein has been subject to these electrical inclusion adjustments which continue to form part of the base rent paid by the petitioners.[2]
On November 3, 1997 the Landlord filed an application with DHCR to terminate owner-supplied electric service and convert to individual metering. On February 24, 1998 the Rent Administrator issued an order permitting the conversion and applied the schedule of rent decreases provided for in Operational Bulletin 96-2 (OB 96-2) which petitioners challenge.
Prior to OB 96-2, DHCR maintained a three-step process for determining rent reductions following a conversion to individual metering. First, DHCR determined that the basé rents of tenants who had been supplied electricity were increased an average of 6.6%; thus, the first step was to reduce the rent 6.6% to eliminate the effect of past electrical inclusion adjustments issued by the Rent Guidelines Board. Second, DHCR imposed a temporary “stage 1” monthly rent reduction which amounted to $25 per month for a studio; $30 for a one bedroom; $35 for a two bedroom; and $5 more for each additional bedroom. These reductions were intended to offset the cost of electricity which had previously been paid by the owner and which the tenants would now pay. The schedule was not precise but was subject to correction by the next step. Third, the owner was required to file a “stage 2” application at the end of one year which allowed the rent reductions to be adjusted to reflect actual savings in electricity costs to the owner, allowing for an increase or decrease in rent to avoid a windfall to the owner or tenants.
OB 96-2, which changed the method of calculating the rent for converted buildings, was issued on August 28, 1996. It replaced the three-step process with a single-step reduction based on fixed schedules derived from the Federal section 8 (42 USC § 14371) program. DHCR’s counsel explains this method as reducing the rents “on a one-time basis by a standard Utility Allowance promulgated * * * in connection with the ‘Section 8’ rent subsidy program, and based upon the actual cost of electricity as reported by the suppliers. The purpose of the Sec *829 tion 8 subsidy program is to provide rent subsidies to enable eligible tenants to afford decent housing in the private sector at market rents. Since Section 8 applies to market rate housing, it is appropriate to use a Section 8 allowance for apartments subject to the RSL.” (Marcia P. Hirsch, affirmation in opposition to petition, para 24, at 10.) The schedule provides for a one-time rent reduction of $31 for a studio apartment; $35 for a one bedroom; $41 for a two bedroom; $46 for a three bedroom; and $49 for a four or more bedroom unit. In addition, special charges for appliances which consume large quantities of electricity are eliminated. The decreases authorized by OB 96-2 are final.
The three-step method which resulted in a larger decrease in rent than the current schedule, and, which, by factoring in the 6.6% reduction directly took into account a reduction, due to past increases based on electrical inclusion adjustments, was challenged as irrational and upheld in Matter of Maya Realty Assocs. v Holland (235 AD2d 424 [2d Dept 1997]).
Moreover, the method of computation applied prior to the three-step process, which mandated that the landlord calculate for each apartment the actual amount of the electrical inclusion allowance, and to cease collecting that portion of the tenants’ rent which was directly attributable to it, in addition to per room decreases to reflect the actual savings to the landlord and expenses to the tenants, also was upheld (Matter of Windsor Park Assocs. v New York City Conciliation & Appeals Bd., NYLJ, Feb. 23, 1983 at 11, col 1 [Sup Ct, NY County, Fraiman, J.], affd 95 AD2d 986 [1st Dept 1983]).
In the instant proceeding, the Rent Administrator’s order applied the schedule of rent decreases provided for in OB 96-2. Petitioners filed a PAR to annul the order on the grounds that the adoption of the OB 96-2 Bulletin was both substantively and procedurally defective.
DHCR denied petitioners’ PAR finding, inter alia, that OB 96-2 was “not inconsistent with the RSL and RCS, or ultra vi-res, as its stated intent is to ensure that the rent decreases upon conversion appropriately reflect the cost of electric current. The intent to establish such a schedule of rent decreases to be utilized when an owner decreases services pursuant to Section 2522.4(d) of the RSC by eliminating electricity as a rent included service is consistent with the purposes of the RSL and the RSC” (order and opinion denying the petition for administrative review, exhibit B-ll). Petitioners challenge that denial in this CPLR article 78 proceeding.
*830 Arguments
Petitioners argue that the adoption of OB 96-2 is arbitrary and capricious since the section 8 subsidy conversion tables do not take into account the electrical inclusion allowance rent increases which were levied solely to compensate landlords for electrical costs. Specifically, petitioners argue that by eliminating the 6.6% reduction, the fixed schedule fails to compensate tenants for the percentage increases previously granted based on the electrical inclusions.
In support of their argument, petitioners rely on “[d]ata made available from the 1996 New York City Housing and Vacancy Survey (‘HVS’) and included in the record below [which] suggests that DHCR’s findings with regard to differences in rent levels between electrical inclusion buildings and individually metered buildings may have been understated. As set forth in the Petitioner’s PAR * * * at the time the 1996 survey was taken, citywide average rents in pre-war electrical inclusion buildings were $708.49 vs. $629.50 per month for individually metered buildings. In sum, rents for pre-war master metered buildings were 12.54% higher than individually metered buildings. The gap was somewhat less in Manhattan where master metered buildings paid rents that were 7.59% higher than individually metered buildings” (petitioners’ memorandum of law, at 5). Thus, petitioners argue the 6.6% reduction prevented the owners from collecting a windfall in rents, and its elimination creates unjustified retention of prior increases to the Landlord.
Petitioners also argue that the adoption of OB 96-2 violates the State Administrative Procedure Act, and that DHCR changed the rule without justification or explanation.
Respondents counter that OB 96-2 is not a rule subject to the State Administrative Procedure Act, that DHCR is entitled to deference afforded administrative agencies over the interpretation of statutes they implement and, for the first time in this article 78 proceeding, offer the explanation that OB 96-2 is based on the New York City Housing Authority’s section 8 schedule which results in a “more streamlined process” (Marcia P. Hirsch, affirmation in opposition to petition, para 26, at 11).
Discussion
Pursuant to State Administrative Procedure Act § 102 (2) (a) (i), a “rule” is defined as “the whole or part of each agency statement * * * of general applicability that implements or ap *831 plies law * * * or the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof.” Excluded from this definition are “rules concerning the internal management of the agency which do not directly and significantly affect the rights of or procedures or practices available to the public” and “interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [i], [iv]).
The Court of Appeals has determined that an agency policy falls within the scope of the State Administrative Procedure Act when it is “ ‘a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers’ [Matter of Roman Catholic Diocese v New York State Dept. of Health, 66 NY2d 948, 951] * * * [Thus] a rigid, numerical policy invariably applied across-the-board to all * * * without regard to individualized circumstances or mitigating factors * * * falls plainly within the definition of a ‘rule’ for State Administrative Procedure Act purposes” (Matter of Schwartfigure v Hartnett, 83 NY2d 296, 301-302 [1994]).'
The current schedule as set forth in OB 96-2 is a “rigid numerical policy invariably applied across-the-board to all,” and, thus, constitutes a rule within the meaning of the State Administrative Procedure Act. (Matter of Schwartfigure v Hartnett, 83 NY2d 296, 301 [1994], supra; Matter of Cordero v Corbisiero, 80 NY2d 771 [1992]; see also, Matter of 10 Apt. Assocs. v New York State Div. of Hous. & Community Renewal, 240 AD2d 585 [2d Dept 1997].)
In 10 Apt. Assocs. (supra), the facts involved circumstances similar to the circumstances herein. In that case, DHCR promulgated a rule in an Operational Bulletin which provided for rent adjustments to compensate landlords for unavoidable increases in co^ts and which replaced an earlier, flexible Operational Bulletin. The rule was invalidated based on the failure of DHCR to comply with the State Administrative Procedure Act.
Like the Operational Bulletin in 10 Apt. Assocs. (supra), in the instant case, it is undisputed that DHCR failed to follow the dictates of section 202 (1) of the State Administrative Procedure Act, that is, that prior to its adoption, DHCR failed to submit the proposed rule to the public so that all affected parties would be given a period of time to submit comments. Thus, the rule is invalid, and this matter must be remanded to DHCR *832 for compliance with the State Administrative Procedure Act (Matter of Schwartfigure v Hartnett, 83 NY2d 296 [1994], supra; Matter of 10 Apt. Assocs. v New York State Div. of Hous. & Community Renewal, supra).
As to petitioners’ argument that the determination is arbitrary and capricious, it is clear that DHCR is empowered by the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4 [RSL]) and the Rent Stabilization Code (9 NYCRR parts 2520-2530 [RSC]) to determine what constitutes a required service, and whether curtailment of such service is an evasion of stabilized rents. With respect to electrical conversions, the RSC expressly authorized DHCR to grant permission to an owner to reduce required services with a reduction in the legal rent upon finding that “such decrease is not inconsistent with the RSL or * * * Code” (9 NYCRR 2522.4 [d] [3]).
In fulfilling this responsibility, since 1984, and prior to the effective date of OB 96-2, in determining the amount of reduction in rent to which a tenant is entitled when a building converts from mass metering to individual metering, DHCR had factored in a 6.6% reduction in addition to the per room reduction, as adjusted by actual savings to the owner, to offset the owner’s prior increases due to the electric inclusion adjustments.
In fact, just 15 months before OB 96-2 was issued, in May 1995 DHCR upheld its prior formula with this explanation: “The DHCR has continued the practice and policy of the CAB which established a procedure for determining appropriate rent reductions upon conversion to an individual electric meter system. This procedure takes into account the benefits and liabilities incurred by both owners and tenants as a result of the conversion, and is designed to provide a rent reduction fair to both owner and tenant. In each case the rent agency reviews the facts and determines the issue of the value of the service. Among the factors which are considered in the procedure are the savings in electricity bills which the owner will obtain as a result of the conversion, the difference in electric rates, i.e., the lower ‘bulk’ rate charged to owners as opposed to the higher ‘retail’ rate charged to tenants, the modification of electrical service provided, in that tenants will no longer be provided with unlimited ‘free’ electricity but will now be compelled to conserve electricity, and the fact that all future electric rate increases will [now] be borne by the tenants, rather than the owner * * * [In addition], [t]he adjustments are also intended *833 to prevent the owner’s windfall profit on the elimination of a service it, unilaterally, no longer chooses to pay for and to compensate the tenants for incalculable but real burdens, such as the tenants’ assumption of the risk of increased energy costs, which could well exceed the designated compensation.” (Matter of Maya Realty Assocs., docket No. JE 110004RP, slip opn, at 4, 6, reply affirmation, exhibit A, upheld in Matter of Maya Realty Assocs. v Holland, 235 AD2d 424 [2d Dept 1997], supra.)
In an article 78 proceeding, the determination is limited to whether a rational basis exists for the action of the administrative body. (Matter of Colton v Berman, 21 NY2d 322 [1967].) An action is arbitrary when it is without a sound basis in reason (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]).
The Court of Appeals has held that an agency’s unexplained departure from its prior interpretation of the statute that it administers is, as a matter of law, arbitrary and capricious. (Matter of Richardson v Commissioner of N. Y. City Dept. of Social Servs., 88 NY2d 35 [1996]; Matter of Lafayette Stor. & Moving Corp., 77 NY2d 823 [1991]; Matter of Martin, 70 NY2d 679 [1987]; Matter of Field Delivery Serv., 66 NY2d 516 [1985].) It is a fundamental principle of administrative law that the administrative agency justifies any departure from its prior practice. (Matter of Lafayette Stor. & Moving Corp., 77 NY2d 823 [1991]; see also, Matter of Brusco v State Div. of Hous. & Community Renewal, 239 AD2d 210 [1st Dept 1997].) Thus, DHCR was required to justify both its change in the rule from the three-step method to the single-step fixed schedule, and the elimination of the electrical inclusion allowance. The three-step method took into consideration the 6.6% reduction based on past electrical inclusion increases to owners, a per bedroom reduction which estimated the costs and a final adjustment for actual costs to both the owners and tenants.
At the proceeding before DHCR, petitioners’ PAR challenged the order and the opinion denying the PAR. DHCR offered no justification or explanation for its departure from its prior practice, stating only that the intent was to insure that the rent decreases reflect the cost of electricity and that this was not inconsistent with the RSL and RSC. Absent justification for the change, the rule is invalid. (Matter of Lafayette Stor. & Moving Corp., 77 NY2d 823 [1991], supra; see also, Matter of Brusco v State Div. of Hous. & Community Renewal, 239 AD2d 210 [1st Dept 1997], supra.)
Furthermore, DHCR’s attempts to offer such justification for the first time herein cannot be considered (Matter of Trump- *834 Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 593 [1982] [“A fundamental principle of administrative law * * * limits judicial review of an administrative determination solely to the grounds invoked by the agency, and if those grounds are insufficient or improper, the court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis”]).
Significantly, had DHCR followed the dictates of the State Administrative Procedure Act, and prior to its adoption of OB 96-2 submitted the proposed rule for publication and afforded the public and all affected parties a period of time to submit comments pursuant to State Administrative Procedure Act § 202 (1), presumably during that comment period DHCR would have explained its new policy, so that a record would exist to be examined in determining whether there is a rational basis for the change. In addition, had DHCR explained its reasoning below, the court would be able to determine whether the elimination of the electrical inclusion adjustment was rationally based.
Conclusion
Accordingly, the order under review is reversed and this matter is remanded to the agency.

. Pending the hearing of this proceeding this court issued a temporary restraining order (TRO) which enjoined Manhattan East Realty L. L. C. from enforcing or acting upon the DHCR order permitting such transference of electrical costs. After the submissions of briefs and oral argument, the TRO was dissolved and the request for a preliminary injunction was denied on May 10, 1999. Petitioners were unable to establish irreparable injury since any potential injury was compensable at law.

. The rent in buildings which were always individually metered (i.e., the tenants paid for their own electricity) never received these increases.