[945 NYS2d 49]

In the Matter of LITE VIEW, LLC, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent.

First Department, May 24, 2012

APPEARANCES OF COUNSEL

*Kucker & Bruh, LLP*, New York City (*Robert H. Berman* of counsel), for appellant.

*Gary R. Connor*, New York City (*Martin B. Schneider* and *Patrice Huss* of counsel), for respondent.

**OPINION OF THE COURT**

TOM, J.P.

The issue raised on this appeal is whether petitioner owner's proposed installation of an elevator shaft within a tenant's apartment will change the shape and character of the dwelling space and materially affect the tenant's use and enjoyment of that space in contravention of the rent laws.

Owner acquired the premises known as 218 East 84th Street in Manhattan by an indenture dated April 14, 2009. The building is described as a five-story walk-up containing 20 residential units, four on each floor. Two weeks later, owner filed an application with respondent Division of Housing and Community Renewal (DHCR) to install an elevator.

Owner's application recites that five apartments in vertical line D of the building "will need to transfer space from their existing kitchens to the proposed [elevator] shaft." The ground-floor unit, which is rent-stabilized, is occupied by tenant John Burke. The other four apartments in line D are currently vacant and deregulated. Tenant's unit is a rectangular studio apartment with the bathroom and kitchen located in the front of the dwelling unit and the rear of the unit facing the courtyard. In order to accommodate the elevator shaft to be installed at the front of the unit, the existing bathroom would be relocated rearward in the space now occupied by the kitchen, which would, in turn, be reconstructed in the living area. This being a

small studio apartment, the living room also functions as tenant's bedroom.

In its application, owner proposed extending the rear of the building into the backyard to replace the floor space lost by the installation of the elevator shaft; renovating tenant's apartment and relocating tenant to a comparable apartment at owner's expense during the approximately two months required to complete the necessary alterations; and reducing tenant's rent by 10% to compensate for his loss of the use of that portion of the backyard taken up by the proposed extension. The Rent Administrator issued an order granting owner "permission to change or decrease dwelling space, essential services, etc." pursuant to Rent Stabilization Code (9 NYCRR) § 2522.4.

Tenant filed a petition for administrative review (PAR) supported by the affirmation of his attorney, asserting that tenant has resided in the apartment since 1978, that he is a "severely disabled senior citizen, who requires the assistance of a home attendant due to his poor health" and that requiring him to relocate, even temporarily, would be "extremely burdensome, due to his poor health and advanced age." It asserts that owner's attempt to compensate for the loss of the 66 square feet required for the elevator shaft by extending the rear of the apartment is inadequate and that the proposed alterations "would completely change the shape and character of the apartment."

By order of the Deputy Commissioner, DHCR granted tenant's PAR and revoked the Rent Administrator's order. The Deputy Commissioner's order summarizes owner's proposal to take about 63 square feet, or 18% of the dwelling space, from the front of the apartment to accommodate the elevator shaft and to add some 66 square feet at the rear of the apartment. The order further notes that the proposed elevator installation is not a necessary improvement or required by law. It makes no finding on whether the backyard was under the exclusive control of tenant, nor does it address either the effect of a temporary relocation on his health or the benefit conferred by receiving a newly renovated apartment with a 10% reduction in rent. It concludes that the proposed alterations to the apartment "would result in a significant reconfiguration of the apartment and the impact of such a significant change would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the Rent Laws."

Owner brought this CPLR article 78 proceeding to annul DHCR's determination, culminating in the judgment under review.

Supreme Court held that "DHCR's determination is based on its evaluation of the specific facts of this situation and its expertise in evaluating such facts[ ] is supported by the record, and is therefore entitled to deference and shall not be disturbed" (30 Misc 3d 1224[A], 2011 NY Slip Op 50192[U], * 7 [2011]). Owner contends that the court committed error in deferring to the agency's expertise because DHCR's determination was issued "without regard to the facts" and was, thus, arbitrary and capricious.

Applications to reduce or alter dwelling space pursuant to section 2522.4 are fact-specific, warranting assessment on a case-by-case basis, and the courts appropriately defer to an administrative agency's determination based on an "evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). Where an agency's factual findings have a rational basis and are not unreasonable, its determination will not be disturbed (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]).

DHCR's determination was not arbitrary and capricious within the meaning of *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County* (34 NY2d 222, 231 [1974]). The finding that owner's proposal would significantly reconfigure the apartment, thereby materially reducing tenant's use and enjoyment, has a rational basis in the record and therefore, was not made "without regard to the facts" so as to be deemed arbitrary (*Matter of West Vil. Assoc. v Division of Hous. & Community Renewal*, 277 AD2d 111, 112 [2000]). While owner contends, inter alia, that the foyer area (separated from the proposed new kitchen by a "dropped arch") should be included in the calculation of the new kitchen size, there is a rational basis for the Commissioner's decision not to include this space. Notwithstanding that the exact dimensions and relative desirability of the existing and proposed kitchens are subject to debate, the existing kitchen certainly appears much more spacious, consisting of about 9 1/2 feet of counter space and appliances against one side wall with about 6 1/2 feet of open kitchen space in front. Owner's diagram shows that the proposed kitchen would consist of 6 1/2 feet of counter space and appliances against the bathroom wall and, parallel to it, a row of counter tops extending 6 1/2 feet from the side wall, with a two-foot-five-inch-wide aisle separating the two counters. The effect of the alteration would reduce the actual physical space available for food preparation to a

significantly smaller area with only a two-foot-five-inch wide and six-foot-six-inch long, narrow aisle in which to move about to cook and wash. Further, a comparison of the respective floor plans shows that the existing kitchen includes a three-foot by five-foot closet or pantry, as well as a small clothes closet. In the proposed plan, the pantry and small closet are eliminated, in part to enlarge the bathroom from its original width of 5½ feet to approximately eight feet seven inches. The proposed alteration would leave the new kitchen without a pantry or closet space. Owner's proposed replacement closet, to be built in the living room/bedroom, would also diminish tenant's living space in that part of the apartment. Whatever else may be said, the record supports the Deputy Commissioner's finding that the proposed alterations to the kitchen represent "a significant reconfiguration of the apartment." Owner's proposal would change the "shape and character" of tenant's existing apartment from the one he rented (*see Matter of Greenberg v Higgins*, 167 AD2d 216, 217 [1990]).

The dissent is incorrect that the majority misapprehends that " 'adequate substitution' means replication." Rather, our ruling is based on the record, which amply supports the Deputy Commissioner's findings that owner's proposed alteration would result in a "significant reconfiguration" of tenant's dwelling space, specifically the kitchen and the substantial reduction of its size, and the adverse impact on tenant's use and enjoyment of the apartment. Contrary to owner's contention, the Deputy Commissioner clearly appreciated that the amount of living space to be removed from the kitchen area of the apartment was to be replaced with an equivalent amount of space added to the living-dining area by extending the apartment into the backyard. However, based on the foregoing findings, the Deputy Commissioner determined that owner's proposal to enlarge the apartment by 66 square feet, extending it into the backyard, would not be an adequate substitute for the lost dwelling space.

Here, the issue is whether owner's installation of an elevator shaft and necessary alterations to tenant's apartment would compromise services furnished on the base date of the lease that owner is required to maintain (Rent Stabilization Code [9 NYCRR] § 2520.6 [r] [1]). In *Greenberg*, we applied an "adequate substitute" test under which alterations that affect required services are evaluated with respect to whether the alterations result in the provision of sufficiently equivalent services. DHCR, applying its administrative expertise, determined

that the proposed alterations would not result in the maintenance of required services, essentially deciding that the renovated apartment, and its kitchen in particular, would not provide "[t]hat space and those services which the owner was maintaining or was required to maintain on the applicable base dates . . . and any additional space or services provided or required to be provided thereafter by applicable law" (§ 2520.6 [r] [1]). Because the Deputy Commissioner's determination represents a rational interpretation of the Rent Stabilization Code and is supported by the evidence, it must be judicially sustained (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]; *Greenberg*, 167 AD2d at 217).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Joan B. Lobis, J.), entered January 14, 2011, denying the petition which sought to annul and set aside the order and opinion of respondent New York State Division of Housing and Community Renewal dated April 22, 2010, which granted the petition for administrative review filed by the tenant of the subject premises and revoked a previously issued order of the Rent Administrator that had granted owner's application to, inter alia, install an elevator within the premises, and dismissing the proceeding brought pursuant to CPLR article 78, should be affirmed, without costs.

CATTERSON, J. (dissenting). I must respectfully dissent because, in my opinion, the determination of DHCR's Deputy Commissioner was made "without regard to the facts." More importantly, the finding that the "alteration" of the subject apartment is inconsistent with the rent laws ignores well-established precedent. Rather than considering the impact on the tenant of reconfiguration, or "alteration to the shape and character" of an apartment, precedent requires the application of an "adequate substitute" test, which, in my opinion, is satisfied here. The majority's holding to the contrary is based primarily on the findings that (a) the foyer space should not be included in the new kitchen size because the alteration would reduce the actual physical space available for *food preparation*; and (b) the alteration would leave the new kitchen without a pantry and small closet even though a replacement closet would be constructed in the living space. The majority appears to be under the misapprehension that "adequate substitution" means replication.

This CPLR article 78 proceeding arises from the application

by Lite View, LLC, the owner of an apartment building on East 84th Street, Manhattan, for modification of services in a ground-floor, rent-stabilized unit. Within weeks of purchasing the building, the owner filed the application with the New York State Division of Housing and Community Renewal (hereinafter referred to as the DHCR), as required by the Rent Stabilization Laws and Rent Stabilization Code.

In the application, the owner stated that, in order to install an elevator in the five-story, 20-apartment building, he needed to use 63 square feet of the apartment on the ground floor. He stated that the tenant in the apartment would be compensated by an extension of the dwelling space into the backyard by an additional 66 square feet. At the time, the tenant had access to, but not exclusive use of the backyard. The owner proposed a 10% monthly rent reduction for the duration of the lease.

The owner further advised DHCR that it would completely renovate the tenant's apartment by installing new walls and ceiling, new flooring, new kitchen appliances and fixtures, a new bathroom and fixtures, and new windows. During the renovation, the tenant would be temporarily relocated to another building in the vicinity of the subject building. Both the renovation and the relocation would be at the owner's sole expense.

In September 2009, the Rent Administrator issued an order, granting the owner permission to install the elevator, provided that the owner relocated the tenant while construction was ongoing, and provided that the tenant's rent was reduced as offered. The tenant filed a petition for administrative review (hereinafter referred to as PAR) asserting for the first time that relocation would be an undue burden on his health, and that under the proposed plans he would be losing living space.

The DHCR Deputy Commissioner granted the PAR and revoked the Rent Administrator's order relying on two provisions of the Rent Stabilization Code. She found, inter alia, that the elevator was not required by law; that the renovation would result in the loss of 62 square feet, that is, 18% of the tenant's dwelling space; and that the "significant reconfiguration . . . would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the rent laws." The Deputy Commissioner further cited to this Court's decision in *Matter of Greenberg v Higgins* (167 AD2d 216 [1990]) which she observed addressed "[a] similar situation" where an application was denied because the proposed modification plans "completely altered the shape and character of the apartment."

Subsequently, the owner commenced this article 78 proceeding, challenging the determination. Supreme Court found that the Deputy Commissioner had made "several misstatements of fact" based on a misreading of the floor plans for the apartment (30 Misc 3d 1224[A], 2011 NY Slip Op 50192[U], * 7 [2011]). These "misstatements of fact" included the finding that there would be a reduction in the size of the apartment, notably because the new kitchen would be smaller than the existing one. Nevertheless, Supreme Court upheld the determination, finding that the determination of a "significant reconfiguration of the [a]partment" had "at least *some* rational basis" because it was "based on [an] evaluation of the specific facts . . . and [the Deputy Commissioner's] *expertise in evaluating such facts*, is supported by the record" (*id.* [emphasis added]).

For the reasons set forth below, I would reverse Supreme Court, annul the Deputy Commissioner's ruling, and grant petitioner's application for modification of the subject premises. It is well established that the determination of an administrative agency "will not be disturbed if it has warrant in the record, a reasonable basis in law, and is neither arbitrary or capricious." (*Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y.*, 94 AD2d 614, 617 [1st Dept 1983], *affd* 62 NY2d 763 [1984]; *see also Matter of West Vil. Assoc. v Division of Hous. & Community Renewal*, 277 AD2d 111, 112 [1st Dept 2000] ["determination may be found arbitrary where it is without sound basis in reason and is generally taken without regard to the facts"] [internal quotation marks omitted].)

On appeal, the owner asserts that because the Deputy Commissioner's determination was made without regard to the facts, it should be annulled. I agree to the extent that Supreme Court's deference to the Deputy Commissioner's "expertise in evaluating the facts" appears illogical given the court's observation that the Deputy Commissioner was clearly mistaken about three determinative facts she purported to evaluate. Based on the floor plans in the record, Supreme Court correctly noted that the apartment size would not be reduced by 18%, but that, in fact, the interior square footage would be "virtually unchanged." It also correctly found that "the kitchen area in the proposed design is arguably *larger* than the kitchen area in the current design" (2011 NY Slip Op 50192[U], * 7 [emphasis added]). Lastly, the court properly concluded that, because the Deputy Commissioner had failed to determine that the tenant had exclusive use of the rear yard, there was no reduction of a required service.

However, this does not end the analysis because it is also well established that judicial review of an administrative determination is limited to the grounds invoked by the agency. (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753 [1991].) Here, the Deputy Commissioner did not deny the owner's application based strictly on a decrease in dwelling space. Rather, the Deputy Commissioner ruled that the owner's proposed changes "would result in a significant reconfiguration of the apartment and the impact of such a significant change would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the [r]ent [l]aws."

The rent laws on which the Deputy Commissioner relied are provisions of the Rent Stabilization Code (9 NYCRR) § 2520.6 (r) (1) and § 2522.4 (e). In relevant part, the first provision defines "required services" as the requirement of maintaining "[t]hat space and those services which the owner was maintaining or was required to maintain" on certain applicable dates. The second provision permits an owner to file an application to

> "modify or substitute required services, at no change in the legal regulated rent . . . on the grounds that: (1) the owner and tenant, by mutual voluntary written agreement, consent to a modification or substitution of the required services . . . or (2) such modification or substitution is required for the operation of the building in accordance with the specific requirements of law; or (3) such modification or substitution is not inconsistent with the [Rent Stabilization Law] or this Code." (9 NYCRR 2522.4 [e].)

The Deputy Commissioner purported to find legal authority for her determination that the "alteration to the [subject] apartment was not consistent with the rent laws" in this Court's decision, *Matter of Greenberg v Higgins* (167 AD2d 216 [1990], *supra*). On appeal, the respondent DHCR also relies on *Greenberg* to argue that the Deputy Commissioner's determination has a rational basis because in *Greenberg* an owner's application to install an elevator shaft was denied when his proposed plan to extend a tenant's apartment "completely alter[ed] the shape and character of the apartment." (167 AD2d at 217.) Hence, the respondent now asserts that a "[m]aterial alteration to the shape or character of a rent[-]stabilized apartment without the tenant's consent is prohibited by law."

Not only do the respondent—and the Deputy Commissioner—totally misconstrue *Greenberg* as set forth more fully below, but

as a threshold matter the respondent is simply incorrect about the requirement of a tenant's consent. Given the statutory procedure outlined above, where tenant consent is just one of three grounds, it is evident that a tenant's consent is *not* required in order for an owner to obtain DHCR approval for a modification. More importantly, there is no statutory authority for a finding that "significant reconfiguration" or rearrangement of a dwelling space or even a "material alteration to the *shape* or *character* of a rent[-]stabilized apartment" (emphasis added) is inconsistent with the rent laws. There is no language in the rent laws that, in and of itself, proscribes reconfiguration, rearrangement or alteration of rent-stabilized apartments.

The primary purpose of the rent laws as applied to rent-stabilized apartments is to "prevent the exaction of unjust, unreasonable and oppressive rents and rental agreements." (*See* 9 NYCRR 2520.3.) Legal regulated rents may be increased or decreased only as specified in the Rent Stabilization Code. (9 NYCRR 2522.1.) Indeed, the modification provision relied on by the Deputy Commissioner falls within the section titled "[a]djustment of legal regulated rent." (*See* 9 NYCRR 2522.4.)

The provisions of this section allow an owner to make an application to increase rent (for example in a situation where an owner or landlord has increased services or made major capital improvements) (*see* 9 NYCRR 2522.4 [a] [1]); or to reduce required services or dwelling space for a corresponding rent reduction (*see* 9 NYCRR 2522.4 [d]); or to modify or substitute required services or dwelling space at no change of rent (*see* 9 NYCRR 2522.4 [e]). In other words, any reduction in dwelling space or required services without a corresponding reduction in rent will contravene the rent laws. (*See e.g. Matter of Car Barn Flats Residents' Assn. v New York State Div. of Hous. & Community Renewal,* 184 Misc 2d 826, 832 [Sup Ct, NY County 2000] [DHCR is empowered to determine what constitutes required services and whether the curtailment of such services translates into an "evasion of stabilized rents"].) To the extent there is a modification of dwelling space or required services, the rent laws require adequate substitution provided by the owner. (*Greenberg,* 167 AD2d at 217, citing *Matter of Vento v Prince,* 73 AD2d 884 [1st Dept 1980].)

In *Vento,* this Court affirmed the determination of the Conciliation and Appeals Board (hereinafter referred to as CAB), the forerunner of DHCR, that rent-stabilized tenants were not denied any required services when the owner of the building

converted from manual to automatic operation of elevators. This Court found that CAB "correctly used an 'adequate substitute' test" to determine that the owner had provided adequate substitute protective and security services. (73 AD2d at 885.)

Hence, both the Deputy Commissioner and the respondent misconstrue the plain import of *Greenberg* and the well established precedent of this Department by zeroing in on the one phrase describing the proposed, and rejected, "sliver" extension of the apartment in *Greenberg* as per se prohibited because it "completely alter[s] the shape and character of the apartment." (167 AD2d at 217.) Certainly, *Greenberg* does not support the respondent's argument that the proposed extension in this case is also per se prohibited because "as this Court has already ruled . . . *such an extension* . . . is not an adequate substitute" (emphasis added).

In my opinion, this is a flagrant mischaracterization of *Greenberg*. There are no facts in *Greenberg* that would allow the respondent to assume that the proposed extension of the tenant's apartment in that case is similar in square footage, shape or any other way to the extension proposed in this case. Thus, there is no basis whatsoever for the Deputy Commissioner viewing it as a "similar situation" or the respondent viewing it as "on all fours" with the instant case in order to deny the owner's modification application in this case unless one were to accept that *Greenberg* establishes a per se prohibition.

Rather, "adequate substitution" must be determined on a case by case basis. Here, as Supreme Court correctly noted, the proposed 66-square-foot extension of the apartment into the backyard results in the same square footage. The plans in the record establish that the layout of the studio apartment is also virtually unchanged from the existing layout, and thus not a "drastic" or "significant" reconfiguration. Moreover, even if the reduction in the size of the backyard were seen as a reduction of a required service, the owner has offered the tenant a 10% monthly reduction in rent for the duration of the lease. Additionally, the owner has offered to renovate the entire apartment installing a new bathroom with new fixtures, a new kitchen with new appliances, new flooring, and new windows, all at the owner's sole cost. In my opinion, it would be the very essence of arbitrariness to find that such a proposal for modification is not an adequate substitute for taking 63 square feet from the entrance to the apartment and moving the total interior space 63 square feet to the rear of the existing studio.

RENWICK, FREEDMAN and MANZANET-DANIELS, JJ., concur with TOM, J.P.; CATTERSON, J., dissents in a separate opinion.

Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered January 14, 2011, affirmed, without cost.